**LANE-WELLS COMPANY, Petitioner,**

v.

**CONTINENTAL-EMSCO COMPANY, Respondent.**

**No. A–10812.**

Supreme Court of Texas.

Dec. 1, 1965.

Rehearing Denied Jan. 12, 1966.

Patterson, McDaniel, Moore & Browder, Houston, for petitioner.

L. L. James, Tyler, for respondent.

WALKER, Justice.

This is a controversy between claimants who furnished services, materials and supplies used in drilling an oil and gas well on the Swift Ranch Lease in Leon County. Each of the claimants perfected and has a valid and subsisting mechanic's and materialman's lien under the provisions of Chapter 3 of Title 90, Texas Revised Civil Statutes 1925. The well was a failure, but certain tubing and casing supplied by Continental-Emsco Company, one of the claimants, was salvaged and sold under orders of the court. The trial court held that the lien of Continental-Emsco on the materials so supplied by it is prior and superior to the liens of Lane-Wells Company and the other claimants, and the Court of Civil Appeals affirmed. 389 S.W.2d 555. In our opinion all of the liens are of equal dignity.

None of the claimants has or asserts any lien other than that conferred by the statutes mentioned above, and the only question to be decided is the relative standing of their statutory liens. The history and development of the applicable statutes has an important bearing on the contentions advanced. For many years there was no statutory lien generally available to laborers and materialmen in the oil and gas industry. See Oil Field Salvage Co. v. Simon, 140 Tex. 456, 168 S.W.2d 848. In 1917 the Legislature enacted a comprehensive statute which was later codified as Chapter 3 of Title 90, Texas Revised Civil Statutes 1925. Acts 1917, p. 28, ch. 17. Section 1 of the original Act, which became Article 5473, provided as follows:

"Any person * * * who shall, under contract, express or implied, with the owner of any land, mine or quarry, or the owner of any gas, oil or mineral leasehold interest in land * * * perform labor or furnish material, machinery or supplies, used in * * * drilling * * * any such oil or gas well * * * shall have a lien on the whole of such land or leasehold interest therein * * * and upon the materials and supplies so furnished, and upon said oil well, gas well * * *."

This statute was amended in 1929 to include one who hauls material, machinery and supplies among those who might acquire a lien thereunder, and to provide that the lien of such person would extend to the materials and supplies so hauled. Acts 1929, 41st Leg., p. 477, ch. 223, § 1. It was again amended in 1957 by adding the language quoted in italics below, and Article 5473 now provides as follows:

"Any person * * * who shall, under contract, expressed or implied, with the owner of any land, mine or quarry, or the owner of any gas, oil or mineral leasehold interest in land * * * perform labor, furnish or haul materials, machinery or supplies used in * * * drilling * * * any such oil or gas well * * * shall have a lien on the whole of such land or leasehold interest therein

* * * and upon the materials, *machinery* and supplies so furnished or hauled, *and upon all other materials, machinery and supplies owned by such owner and used in* * * * *drilling* * * * *such oil or gas well* * * * and upon said oil well, gas well * *."

Continental Emsco says that before the 1957 amendment, a materialman was held to have a prior and superior lien upon the materials and supplies furnished by him, and cites Wagner Supply Co. v. Bateman, 118 Tex. 498, 18 S.W.2d 1052; Wotola Royalty Corporation v. Bethlehem Supply Co., Tex.Civ.App., 152 S.W.2d 480 (affirmed 140 Tex. 9, 165 S.W.2d 443); and Hoffman v. Continental Supply Co., Tex. Civ.App., 120 S.W.2d 851 (reversed 135 Tex. 552, 144 S.W.2d 253). It then points out that the provision extending the lien to "materials and supplies so furnished" was carried forward when the statute was amended in 1957, and argues that each materialman is still entitled to a first and superior lien upon all materials which he furnishes. We do not agree.

Prior to the 1957 amendment, the supplier and the hauler were the only persons given a lien upon personal property which had not become affixed to and a part of the realty. See Security Banking & Investment Co. v. Flanagan, Tex.Com.App., 254 S.W. 761. Except as between the hauler and the supplier, there could be no question as to the priority of statutory liens upon personalty. The relative standing of liens acquired under the statute on property subject thereto was not presented to the appellate court in either Wotola or Hoffman. The controversy on appeal in Wagner Supply Co. v. Bateman, supra, was between Bateman, who asserted a laborer's lien, and Wagner Supply Company, which had a chattel mortgage as well as a statutory materialman's lien upon materials it had supplied. In the course of the opinion it was pointed out that the materialman's lien "was a first lien, which did not lose its priority, *since we have held that the merchandise supplied was removable from the well and*

*premises, and Bateman had no lien there= on."* (Emphasis supplied.) Bateman could not acquire a lien under the statute upon material furnished by another which had not become a part of the realty, and this is the reason given for the conclusion that the "first lien" of Wagner Supply Company "did not lose its priority." It can fairly be inferred from what the Court said that the lien would have lost its priority if the materials had become affixed to the realty so as to entitle other claimants to a statutory lien thereon.

In the present case the Court of Civil Appeals reasoned that when the lease owner purchases material for drilling a well, his title to such material is burdened with a lien in favor of the supplier for the purchase price. Since the 1957 amendment extends the statutory lien to "all other materials, machinery and supplies owned by such owner," the court concluded that any lien acquired under this provision of the statute attaches to whatever title may be held by the owner and is therefore subject to the lien of the supplier. While Article 5473 may be subject to this construction when considered alone, the statute by its terms does not purport to regulate priorities and the Legislature has dealt specifically with that subject elsewhere.

Article 5476, which is part of Chapter 3, provides that "Liens herein created shall be enforced within the same time and in the same manner as provided in the preceding Chapter." This or a substantially similar provision has been included in the laws applicable to mechanic's and materialmen's liens on mineral and leasehold estates since the original statute was enacted in 1917. The preceding chapter is Chapter 2 of Title 90. It contains the several statutes governing liens arising from the furnishing of labor or material for the construction of buildings and other similar improvements. One of the statutes in Chapter 2 is Article 5468, which provides as follows:

"Except as provided in the succeeding article, the liens for work and labor

done or material furnished, as provided in this chapter, shall be upon an equal footing without reference to the date of filing the account or lien. *In case of foreclosure, if the proceeds of the sale of any property described in any account or lien are insufficient to discharge all the liens against the same, such proceeds shall be paid pro rata on the respective liens*; provided, such accounts or liens shall have been filed and suit brought as provided by this law. Nothing in this law shall in any manner affect the contract between the owner and original contractor as to the amount, manner or time of payment of said contract price." (Emphasis supplied.)

The succeeding article is Article 5469. It requires an owner to retain ten per cent of the contract price of the building for thirty days after completion, and gives mechanics and artisans who have complied with the applicable statutes a preference lien, ratably among themselves, upon the fund so retained. If the owner fails to retain such fund, the artisans and mechanics are given, ratably among themselves, a lien upon the property which is superior to that of other claimants. There is no provision in Chapter 3 requiring an owner to retain part of the contract price, and Article 5469 deals with priorities rather than the enforcement of liens. In our opinion it has no application to liens arising under the provisions of Article 5473.

Distribution of the proceeds of foreclosure is, however, an essential step in the enforcement of a lien. Since Article 5468 requires that the proceeds of foreclosure be paid pro rata on the respective liens and the Legislature has directed that liens arising under the provisions of Chapter 3 be enforced in the same manner as provided in Chapter 2, it seems clear to us that all Chapter 3 liens are of equal dignity.

The judgments of the courts below are reversed, and the cause is remanded to the district court with instructions to enter judgment in accordance with this opinion.