E. W. HAYEK et al., Petitioners,

v.

WESTERN STEEL COMPANY et al.,
Respondents.

No. B–2882.

Supreme Court of Texas.

March 15, 1972.

Rehearing Denied May 3, 1972.

Milton W. Walton, Corpus Christi, for petitioners.

Head & Kendrick, Michael Kendrick, Jr., Sorrell, Anderson, Sorrell & Atwill, William R. Anderson, Jr., Corpus Christi, for respondents.

DANIEL, Justice.

This appeal involves the construction of the Mechanics' and Materialmen's Lien Act,[1] particularly Articles 5452 and 5469. The Act, among other things, provides statutory liens for those who labor or furnish materials for the construction or repair of any house, building or improvement. Respondents, as plaintiffs below, sued the Petitioner owners for the unpaid balance on steel and concrete furnished to Petitioners' foundation contractor, claiming that Petitioners are liable therefor under Article 5469. It is unquestioned that under Article 5469 an owner who makes a general contract covering the entire construction of a house or other building must, for the protection of laborers and materialmen, retain in his hands for 30 days after the work is completed ten per cent (10%) of the contract price or value of the house or other building.[2] If the owner fails to retain such fund, then all complying claimants "shall share ratably among themselves, with preference to artisans and mechanics . . ., liens at least to the extent of the aforesaid fund of ten per-cent (10%) which should have been retained as against the house, building . . . or improvement and all of its properties . . ."

The question here is whether the Petitioner owners, who acted as their own builders through numerous separate original contracts, none of which were covered by surety bonds authorized by Article 5472d, had the same obligation under Article 5469 to retain or become liable for an amount equal to ten per cent (10%) of the value of their completed houses. This question was answered in the affirmative by the 156th District Court, San Patricio County, and judgment was rendered for the materialmen, who are Respondents here. Except for modification of the trial court's judgment as to interest, the Court of Civil Appeals affirmed. 469 S.W.2d 206. We affirm the judgment of the Court of Civil Appeals.

This case actually involves twelve separate causes of action which were tried together with the consent of the parties. Each of the Petitioners owned one or more

---

1. Articles 5452 et seq. V.A.T.S. All statutory references herein are to Vernon's Annotated Texas Statutes unless otherwise noted.

2. An exception is made in the event the contractor posts a bond guaranteeing prompt payment for all labor, subcontracts and materials in accordance with Article 5472d.

tracts of land in various subdivisions located in San Patricio County upon which he constructed a house or apartment units. None of Petitioners entered into a general contract for the construction of his improvements at a fixed contract price, but each acted as his own builder for the particular house or other building on his own land. At a total cost of $500,346.97, Petitioners built eleven houses and one unit of apartment houses on their respective lots, with the "total cost and the reasonable value of the work" to complete each of the structures being separately itemized and stipulated. The cost and value of the eleven completed houses totaled $183,437.02 for an average of approximately $16,676.00 per house. The apartment house unit, owned and built by Petitioner Charles McEntire, was stipulated to have a total cost and value of $316,909.95.

Charles McEntire, who had the largest financial interest of any of the owner-builders, was an experienced builder and developer in the area. He testified that he had built about 150 houses since 1953. Although operating under five separate ownerships of land and improvements, Petitioners apparently cooperated in some of their efforts, including the timing of construction. Foundation work on the structures began in November of 1968; the last of the houses was completed in July of 1969; and the apartment house unit was completed in September of 1969. All had been sold before the trial on September 17, 1970.[3]

Each of the owner-builders contracted under separate agreements with Glenn McEntire, brother of Petitioner Charles McEntire, for the construction of a concrete foundation for a building with respect to each separately owned tract of land. They required no surety bonds for payment of liens as authorized by Article 5472d. Glenn McEntire purchased steel and concrete materials for the foundations

from Respondents, Western Steel Company and Gulf Concrete Company, respectively, but failed to pay them in full for such materials. From the stipulations, and other evidence, it appears that total contract price agreed upon with Glenn McEntire was $49,581.00; that the total of Respondents' unpaid claims for materials furnished Glenn McEntire amounted to $20,002.87; that each foundation was completed less than 30 days after delivery of the materials; that each owner-builder paid Glenn McEntire in full before learning that he had not paid Respondents; and that both the notices of unpaid claims and the lien affidavits were given and filed by Respondents more than 30 days after the foundations were completed but prior to the completion of the respective buildings and less than 90 days after the respective indebtedness accrued.

It was further stipulated that the Petitioner owner-builders did not retain any funds during construction or for thirty days after the completion of construction of their respective buildings. They do not deny that Article 5469 and its ten per cent retainage fund applies to them as owner-builders, but they insist that it does not require them to hold or become liable for the same amount (10% of the total cost or value of each house) as if they had entered general "turn-key" contracts for the entire construction of their respective houses. They contend that if liable to Respondents for any amount, it is limited to ten per cent of their respective contract prices with Glenn McEntire for the foundation work, which would total $4,958.10 to be applied ratably on the unpaid claims of Respondents for $20,002.87. Under Respondents' interpretation of Article 5469, the Petitioners are liable on each building up to ten per cent of the cost or value thereof (a total of $50,034.69), which would enable each of their respective claims to be fully satisfied.

3. Respondents' liens were waived under an agreement by which Petitioners deposited in escrow an amount sufficient to cover any final judgment rendered in this case.

The relevant portions of Articles 5452 and 5469, as amended in 1961, are as follows:

"Art. 5452. [5621] [3294] Lien prescribed.

"1. *Any person or firm*, lumber dealer or corporation, artisan, laborer, mechanic or sub-contractor *who may labor*, specially fabricate material, *or furnish labor or material*: (a) *for the construction or repair of any house, building or improvement whatever*; (b) for the construction or repair of levees or embankments to be erected for the reclamation of overflow lands along any river or creek; (c) or for the construction or repair of any railroad: within this state under or by virtue of a contract with the owner, owners, or his or their agent, trustee, receiver, contractor, contractors, or with any subcontractor; upon complying with the provisions of this Chapter *shall have a lien on such house, building, fixtures, improvements, . . . and shall have a lien on the lot or lots of land necessarily connected therewith, . . . to secure payment:* (a) *for the labor done or material furnished* or both for such construction or repair; . . .

. . . . . . .

"2. For the purposes of this Act, the following definitions shall apply:

. . . . . . .

"d. *The work shall be construed as any construction or repair referred to in paragraph 1 of this Article.*

"e. An original contractor is defined as one contracting with an owner, directly or through his agent; and an original contract is defined as an agreement to which an owner is a party, either directly or by implication of law. There may be one or more original contractors." (Emphasis supplied.)

"Art. 5469. [5638] Lien claimants fund with reference to mechanics

"Whenever work is done whereby a lien or liens may be claimed under Article 5452 hereof, *it shall be the duty of the owner*, his agent, trustee, or receiver *to retain in his hands during the progress of such work and for thirty (30) days after the work is completed,* to secure the payment of artisans and mechanics who perform labor or service, and *to secure the payment of any other claimants furnishing material, or material and labor,* or specially fabricated material for any contractor, subcontractor, agent, or receiver in the performance of such work *ten per cent (10%) of the contract price to the owner,* his agent, trustee, or receiver *of such work, or ten per cent (10%) of the value of same,* measured by the proportion that the work done bears to the work to be done, using the contract price or, if none, the reasonable value of the completed work as a basis of computing value. All persons who shall send notices. in the time and manner required by this Act and shall file affidavits claiming a lien not later than thirty (30) days *after the work is completed* shall have a lien upon the *fund so retained by the owner,* his agent, trustee, or receiver; with preference to artisans and mechanics, who shall share ratably therein to the extent of their claims; *with any remaining balance to be shared ratably among all other participating claimants.* If the owner, his agent, trustee, or receiver refuses or fails to comply with the provisions of this Article, then *all claimants complying with the provisions of this Act shall share ratably among themselves,* with preference to artisans and mechanics as above specified, *liens at least to the extent of the aforesaid fund of ten per cent (10%)* which should have been retained, *as against the house, building, structure, fixture, or improvement and all of its properties, and on the lot or lots of land necessarily connected therewith,* to secure payment of such liens." (Emphasis supplied.)

The following cases hold that an owner who does not comply with Article 5469 is liable to the extent of the 10% retainage to

those protected by such Article, and that they are entitled to a lien on the land and improvements: General Air Conditioning Co. v. Third Ward Church of Christ, 426 S.W.2d 541 (Tex.1968); Hunt Developers, Inc. v. Western Steel Company, 409 S.W. 2d 443 (Tex.Civ.App.1966, n. w. h.); Lennox Industries, Inc. v. Phi Kappa Sigma Educational and Building Association, 430 S.W.2d 404 (Tex.Civ.App.1968, n. w. h.). See also W & W Floor Covering Co. v. Project Acceptance Company, 412 S.W.2d 379 (Tex.Civ.App.1967, n. w. h.).

All of the above cases were decided after the present wording of Article 5469 was incorporated in the Hardeman Act, a 1961 revision of Articles 5452 et seq. The *Hunt* case, supra, involved an owner-builder and materialmen's claims similar to those in the present case, and the Corpus Christi Court of Civil Appeals held, as in the present case, that the 1961 revision had not relieved the owner-builder of his liability up to 10% of the entire cost of the buildings. Two years later, in *Lennox*, supra, the Austin Court of Civil Appeals reached an opposite conclusion, holding that an owner-builder's liability under Article 5469 is limited to 10% of each individual contract price rather than 10% of the completed building. In so holding, the Austin Court of Civil Appeals conceded that the measure of liability prior to 1961 was ". . . ten per cent of the contract price of such building fixture or improvement. . ."[4] Petitioners' reliance on this alleged change in 1961 requires an examination of the earlier enactments, the purposes sought to be served thereby, and the purpose and intention expressed by the Legislature in the amendments of 1961.

The history and purpose of constitutional and statutory labor and materialmen's lien laws in Texas indicates that the entire building, or a statutory percentage of the value thereof, was intended to stand as security for such liens.[5] Section 37 of Article XVI of the Texas Constitution, Vernon's Ann.St., adopted in 1876 and still in effect, provides:

"Mechanics, artisans and material men, of every class, shall have a lien upon the buildings and articles made or repaired by them for the value of their labor done thereon, or material furnished therefor; and the Legislature shall provide by law for the speedy and efficient enforcement of said liens."

This constitutional provision is self-executing as between the owner and the laborers and materialmen who contract directly with the owner, without reliance on any statutory provisions. Strang v. Pray, 89 Tex. 525, 35 S.W. 1054 (1896); Keating Implement & Mach. Co. v. Marshall Elec. Light & Power Co., 74 Tex. 605, 12 S.W. 489 (1889). In addition, the Legislature continued to provide statutory liens for the protection of persons who were not in privity with the owner, such as sub-contractors, laborers and materialmen furnishing services or material direct to the original contractor or one of his sub-contractors. Without respect to what particular contract or segment of the work was involved, each of these laws extended the statutory liens to the entire house,

---

4. Petitioners make a similar concession: "Prior to amendment of the statute, the protection afforded was 'ten percent of the contract price of the building' etc. Now, the statute reads 'ten percent (10%) of the contract price to the owner, his agent, trustee, or receiver *of such work*,' etc. (Emphasis added) We submit that the court below failed to recognize this statutory change, if in fact the law was settled contrary to petitioners' position prior to 1961." (Petitioners' Application for Writ of Error, p. 11)

5. The first mechanic's lien law, enacted by the Congress of the Republic in 1839, granted a lien to master builders and mechanics "contracting to erect buildings of any or every description." The lien extended to the buildings and to lands on which they were erected. 2 Gammel's Laws 66. This law was re-enacted and extended to materialmen in 1844. 2 Gammel's Laws 1008.

building or other improvement, and provided methods for fixing and enforcing the liens.[6]

■ However, in 1889 the Legislature provided that "the owner shall in no case be required to pay, nor his property be liable for, any money that he may have paid to the contractor before the fixing of the lien or before he has received written notice of the existence of the debt."[7] It appears that the opportunity thus afforded to defeat a lien by prepayment before commencement or completion of a building led to the Act of 1909, in which the Legislature first provided for a special fund of ten per cent "of the contract price of such building . . . and in the event there be no fixed contract price then a sum equivalent to ten per cent of the value of such building . . . " to be held by the owner

during the building or construction and for 30 days after the completion thereof for the protection and security of mechanics and artisans.[8] This was carried forward in substantially the same terms in Article 5469 as it existed prior to the 1961 amendment.[9] Thus, the special fund of 10% of the total contract cost or value of the completed building, or a lien to that extent, was firmly fixed in the law for the protection of *all* artisans and mechanics who worked on any segment of the construction, provided notice and affidavits were filed with the owners within 30 days after completion of the building. So it was when the Hardeman Act was under consideration.

The Hardeman Act of 1961 was a clarification and revision of Articles 5452 et seq. Nine articles were amended, includ-

6. 2 Gammel's Laws 927, August 7, 1876; Articles 3294–3311, Revised Civil Statutes of Texas, 1895.

7. 9 Gammel's Laws of Texas 1909, 1138, subsequently codified as Article 3308, Revised Civil Statutes of 1895; Article 5635 of the Revised Civil Statutes of 1911; and Article 5463 of the Revised Civil Statutes of 1925. See clarification in Article 5463 as amended in 1961.

8. Tex.Laws 1909, Ch. 103 at 184; Article 5638, Revised Civil Statutes of 1911–1914; Woodward, The Acquisition of Mechanics' and Materialmen's Liens on Non-Homestead Property, 14 Southwestern Law Journal 469, 490. An owner can escape all other statutory liens by prepayment or delivery of notes in full payment to the contractor prior to receipt of notices of claims by derivative claimants. Article 5463, subd. 2. Modern Plumbing Co. v. Armstrong Bros., 36 S.W.2d 1011 (Tex.Comm.App.1931); Coleman v. Newton, 458 S.W.2d 688 (Tex.Civ.App.1970 n. w. h.).

9. The text of Article 5469 prior to the 1961 amendment was as follows:
Art. 5469. [5638] Mechanic's fund
Whenever any mechanic or artisan shall perform any labor or service for any contractor, sub-contractor, agent or receiver, in the erection or repair of any house, building, fixture or improvement, or as a necessary incident in connection with such work of construction or repair, such owner, agent or receiver shall retain in his hands during the progress of such work and for thirty days after the completion thereof, to secure the payment of said artisans and mechanics, ten per cent of the contract price of such building, fixture or improvement, or the repair thereof, or ten per cent of the value of such building, fixture or improvement, or the repair thereof, measured by the proportion that the work done bears to the work to be done thereon, and using the contract price or the reasonable value of the completed building, fixture or improvement, or the repair thereof, as a basis of computation of value. All mechanics or artisans who may file a mechanic's lien upon said building, fixture or improvement so made or erected or repaired in accordance with the law applying thereto, shall have ratably among themselves, a preference lien upon said fund so retained in the hands of such owner, or agent, or receiver. If such owner, receiver or agent refuses or fails to comply with the provisions of this law, the mechanics and artisans performing work thereon *and in connection therewith,* who may file liens thereon in accordance with law, shall have ratably among themselves preference liens, to be preferred above all other liens and claims whatsoever upon such house, building, structure, fixture, or improvement, and all its properties, and on the lot or lots of land necessarily connected therewith to secure payment for such labor thereon. Acts 1909, p. 184.

ing Articles 5452 and 5469; eight were left unchanged; four were repealed; and a new Article 5472d was added. Although comprehensive, the revision "maintains the basic scheme and carries forward much of the language of the prior law."[10] The Legislative purpose was stated in Section 14 as follows:

"The fact that the existing Statutes governing mechanics and materialmen liens are antiquated, vague, and ambiguous, and have been the subject of numerous conflicting court decisions resulting in *loss of liens through technicalities,* creates an emergency and an imperative public necessity. * * *" (Emphasis supplied.)

If there was a purpose or intention in the Hardeman Act to reduce the measure of protection afforded laborers and materialmen on a construction project, whether conducted by the owner through a single original "turn-key" contract or through numerous original contracts, it was not expressed in the caption or the emergency clause. True to its stated purpose, the bill continued the overall scheme of its antecedents and improved the protection offered various types of mechanics and materialmen.[11] The principal change in Article 5469 was to make materialmen eligible to participate in the 10% retainage. Otherwise, it was simply keyed to the new provisions and definitions enacted in Article 5452.

Petitioners argue that there is evidence of Legislative intent to change the measure of the 10% protective fund because the term "work" has been substituted for the term "house, building, fixture or improvement" four times in the 1961 amendment to Article 5469. In this contention, the Petitioners, and the Court of Civil Appeals in *Lennox,* have failed to note that the 1961

revision contains a definition of "the work" as referring to *"the construction or repair of any house, building or improvement whatever."* Article 5452, Sections 1 and 2 d.

In addition to defining and stating how the term "work shall be construed" for the purposes of this Act, Article 5452 employs the term five times in a context which applies to labor, material, etc., used "in the prosecution" of the entire construction project rather than to separate segments thereof. The term "work" is used four times in the same context in Article 5469, which is tied by specific reference to Article 5452. Prior to the 1961 amendment, the measure of the owner's retainage "during the progress of such work and for thirty (30) days after the work is completed" read:

" . . . ten per cent of the contract price *of such building, fixture or improvement* or the repair thereof, or ten per cent of *the value of such building, fixture or improvement,* or the repair thereof, measured by the proportion that the work done bears to the work to be done thereon, and using the contract price or the reasonable value *of the completed building, fixture or improvement,* or the repair thereof, as a basis of computation of value." [Emphasis supplied]

After the 1961 amendment, these words read:

" . . . ten per cent (10%) of the contract price to the owner . . . *of such work,* or ten per cent (10%) *of the value of same,* measured by the proportion that the work done bears to the work to be done, using the contract price or, if none, the reasonable value of the *completed work* as a basis of computing value." [Emphasis supplied]

10. "Supplementary Comment—Mechanic's Liens in Texas", by Alvis and Carssow, 16 V.A.T.S. 1972 Pocket Part, p. 5.

11. Id.; Bonds and Liens on Construction Work in Texas—The Hardeman Act,

Texas A. G. C. Chapters Executive Council, April 1961; Ralph Baker, The New Mechanics and Materialmen's Lien Law, 1009 Texas Bar Journal 1963.

There is no difference in meaning between the 1961 amendment and the words it replaced, if we recognize and use the definition of "the work" as "the construction or repair of any house, building or improvement." By substituting "the work" for the longer phrases of the former statute, the Hardeman Act of 1961 simply said in 59 words the same thing which took 78 words in the previous version.

Petitioners would have us ignore or limit the statutory definition, relying upon *Lennox,* supra, in which the Court of Civil Appeals not only failed to consider the definition of "work" contained in Article 5452, but dropped the phrase "such work" from its consideration of the effect of the present requirement of Article 5469. It stated the measure of retainage as "10% of the contract price to the owner . . . ", omitting the remainder of the statutory language which reads " . . . of such work, or ten per cent (10%) of the value of same . . . " Petitioners insist that we should do likewise and adopt their concept that the retainage applies only to "construction under an original contract with the owner", even though the term "original contract" is not used or referred to in Article 5469. This interpolation of a new and restrictive term and meaning which is at variance with the Legislature's statutory definition would violate cardinal rules of statutory construction. When in the same Act the Legislature defines the meaning of a term, the courts should apply that meaning in interpreting subsequent sections of an act. Gifford-Hill & Co. v. State, 442 S.W.2d 320 (Tex.1969); Hurt v. Cooper, 130 Tex. 433, 110 S.W.2d 896 (1937); 2 Suth.Stat.Const. 222–224, 358. We disapprove that part of the opinion in *Lennox* which is in conflict with this opinion.

It is inconceivable that the Legislature, at the time it was making a broad extension of protection and sharing in this fund to a new class of persons (materialmen), intended to allow an owner to reduce the total amount of the fund by fragmenting it into separate segments through the use of multiple original contracts. It is also impossible to conclude that the Legislature intended one measure of owner liability and laborer-materialmen protection on a house built by the owner under a single "turn-key contract" and an entirely different measure when the owner elects to act as his own builder under multiple contracts or with no contract at all. Any such unequal treatment is avoided by applying the statutory definitions to the operative terms of Article 5469. When there is a contract price for "the work" (construction or repair of any house or building), ten per cent of such contract price for the entire project continues to be the measure of the owner's liability. General Air Conditioning Co. v. Third Ward Church of Christ, supra; W & W Floor Covering Co. v. Project Acceptance Company, supra. See also Lane-Wells Company v. Continental-Emsco Company, 397 S.W.2d 217, 220 (Tex.1966). When there is no contract price for "the work" (construction or repair of any house or building), ten per cent "of the value of same" continues to be the measure of the owner's liability.

That the Legislature still intended the cost or value of the entire building to be the measure for the ten per cent retainage or lien is further confirmed by its reenactment almost verbatim of the last two sentences of Article 5469, which provide that *all* persons sending notices and filing claims *"not later than thirty (30) days after the work is completed* shall have a lien upon the fund so retained by the owner . . . with preference to artisans and mechanics, who shall share ratably therein to the extent of their claims; with any remaining balance to be shared ratably among all other participating claimants"; and that if any owner fails to comply, "then all claimants complying with the provisions of this Act shall share ratably among themselves . . . liens at least to the extent of the *aforesaid fund of ten per cent (10%) which should have been re-*

*tained, as against the house, building, structure, fixture, or improvement* and all of *its properties,* and on the lot or lots of land necessarily connected therewith to secure payment of such liens." [Emphasis supplied.]

The obvious purpose of this statute is to provide, with respect to the construction of any building, a single protective fund equal to ten per cent of the cost or value of the entire building, with *all* complying third party claimants having the right to share ratably in such fund and in a lien to such extent against the entire building. The general class to be protected by this ratable sharing of the fund and lien is comprised of *all* mechanics, artisans and materialmen who perform labor and furnish materials for any part of the building, without regard to the particular segment on which any unpaid claimant worked or furnished materials, and *without regard to whether there be one or multiple original contracts or sub-contracts.* This sharing of the fund by *all* complying claimants can be accomplished only if the cost or value of the entire completed building is used as the basis for figuring the amount which the owner shall hold or otherwise assume liability.

■ Petitioners' theory that their obligations are different when they act as their own builders through multiple original contracts is wholly inconsistent with the plain wording of the Act. Their contention that laborers and materialmen are entitled to share only in ten per cent of the contract price on the particular segment to which they contributed work or materials is contrary to the purpose, plan, and procedure set forth in the statute. It would permit the owner-builder to fragment, isolate *and insulate the ten per cent retainages under the separate contracts,* and thus reduce the total fund which Article 5469 requires to be available for ratable sharing by *all* unpaid artisans, mechanics and materialmen who contribute labor or material to any phase of the construction of a building, and who file their claims and affidavits within 30 days after the completion of

the building. Petitioners' argument for this discriminatory result is based upon their erroneous interpretation that Article 5469 requires owner-builders to withhold, and refuse to pay when due, 10% of the price of all of the original contracts which they enter for *various segments* of the construction project. The statute does not contemplate such fragmentation of the retainage fund. The only requirement for an owner who has no contract price for the entire building is that he "retain in his hands . . . ten per cent (10%) of the value of same." So long as the owner-builder complies with this requirement, he is not required to withhold ten per cent of the bills due each of his original contractors any more than a general contractor is required by law to withhold ten per cent of what he agrees to pay his subcontractors. Article 5468 specifically provides:

"Nothing in this Act shall in any manner affect the contract between the owner and original contractor as to the amount, manner or time of payment of said contract price."

Petitioners, supported by an able amicus curiae brief, assert that the lower courts' interpretation of Article 5469 places them and other owner-builders under greater burdens and liabilities than if they had employed a general contractor; that it will discourage owners from accomplishing great savings by acting as their own builders; and that such result could not have been intended by the Legislature. We find no basis for this argument. In either arrangement the liability of the owner under Article 5469 is the same. If the owner operates through written contracts, whether one original "turn-key" contract or multiple original contracts, he is authorized by Article 5472d to require from his original contractors surety bonds guaranteeing payment of all laborers, subcontractors, materialmen etc., and thereby relieve himself "of all obligations under Articles 5454, 5463 and 5469 . . . ." In the absence of surety bonds, the owner who elects to engage a general contractor for a "turn-key"

job usually contracts to hold 10% of the entire contract price or value of the building until 30 days after completion. Under this arrangement, the general contractor assumes the risk and responsibility of seeing that all laborers and materialmen are duly paid before receiving that portion of his profit or compensation which is represented by the final ten per cent payment from the owner.

If, on the other hand, the owner elects to attempt a saving by acting as his own builder through multiple original contracts (not covered by surety bonds), he must retain 10% of the value of the building until 30 days after its completion, and he must bear the responsibility of seeing that all of his original contractors pay their laborers and materialmen. Assuming that the owner's savings equal the same ten per cent of the value of the completed building that would ordinarily be paid to a general contractor, it appears entirely reasonable that the realization of this saving should be conditioned on the owner-builder assuming the risk and responsibility of making certain that all laborers and materialmen of his various original contractors have been fully paid. In any event, it is an obligation that the owner assumes when he acts as his own builder through multiple original contracts on which he does not require bonds for payment as authorized by Article 5472d.

■ Petitioners make an alternative argument that Article 5469 does not clearly require the meaning given to it by the lower courts, and insist that this is good reason for avoiding an interpretation which might work a hardship on owners who act as their own builders under multiple original contracts. We have found no ambiguity, but if one does exist the proper rule of construction would require that it be resolved in favor of the primary object of the statute, which is to afford security and protection to laborers and materialmen. It is a rule of long standing that the mechanic's and materialman's lien statutes of this State will be liberally construed for the

purpose of protecting laborers and materialmen. University Savings and Loan Association v. Security Lumber Company, 423 S.W.2d 287 (Tex.1967); Oriental Hotel Co. v. Griffiths, 88 Tex. 574, 33 S.W. 652 (1895); Trane Company v. Wortham, 428 S.W.2d 417, 419 (Tex.Civ.App.1968, writ ref. n. r. e.). See also 53 Am.Jur.2d 520; 57 C.J.S. Mechanics' Liens § 4, p. 501.

One reason for the lien statutes and the liberal rule of construction is that labor and materials lose all further value to the laborer and materialman once they are furnished and put into the house or building, but they usually enhance the value of the property to the benefit of the owner and those who take under him.

■ If perfected statutory liens on unpaid labor and material bills result in a loss to someone, the policy of this State requires that it be the owner, at least to the extent of 10% of the cost or value of the house or building. This is not an unjust result when one considers that the owner has three means for his own protection: (1) the requirement of surety payment bonds from all of his original contractors as authorized by Article 5472d; (2) determination in advance of payment to his original contractors that they have paid all their laborers and materialmen; or (3) retainage during the progress of the work and for 30 days thereafter of an amount equal to 10% of the contract price or value of the building as required by Article 5469. Petitioner-owners in this case completely failed to follow either of these methods which would have afforded protection both for themselves and for the Respondent-materialmen.

■ Petitioners further assert that the Court of Civil Appeals erred in dating interest on Respondents' claims from the thirty-first (31st) day after the respective buildings were completed instead of from the date of the trial court's judgment. In similar cases, this Court has held that it is proper to allow pre-judgment interest as damages for the detention of money from

the due date of a liability. Texas Company v. State, 154 Tex. 494, 281 S.W.2d 83 (1955); Texas & N. O. R. Co. v. Dingfelder & Balish, Inc., 134 Tex. 156, 133 S. W.2d 967 (1939); Ewing v. Foley, 115 Tex. 222, 280 S.W. 499 (1926); Watkins v. Junker, 90 Tex. 584, 40 S.W. 11 (1897). Petitioners' liability was fixed under Article 5469 on the thirty-first (31st) day after their respective buildings were completed, and the Court of Civil Appeals correctly adjudged interest from such dates.

Accordingly, the judgment of the Court of Civil Appeals is affirmed.

Dissenting opinion by WALKER, J., joined by GREENHILL, POPE and REAVLEY, JJ.

WALKER, Justice (dissenting).

I respectfully dissent. The language of Art. 5469 is not as clear as it might be, but that is a very good reason for avoiding the construction adopted by the Court. Under the majority holding the statutory retainage withheld by the owner from an original contractor who has fully performed and paid all of his workmen and suppliers will be subject to claims for labor and material furnished to another original contractor who is insolvent. This will inevitably lead to one of two rather harsh results: either (1) the owner will be required to pay more than the total of the contractual obligations incurred by him for the construction of the improvement, or (2) original contractors who fully perform and pay their bills will ultimately receive less than the amounts stipulated in their contracts with the owner. An intention to adopt a statutory scheme of that nature should not be attributed to the Legislature unless the language of the statute is too plain to admit any other construction.

Respondents contend and the Court holds that the 1961 amendment to Art. 5469 made no change in the statute except to include materialmen within its scope. Apparently this conclusion is based largely on the caption and emergency clause of the

Act. It seems to me that the Court fails to give proper weight to the changes in the crucial language of Art. 5469, to other parts of the 1961 revision, and to the practical consequences of its holding. Prior to 1961 the owner was required to retain:

". . . [T]en per cent of the contract price of such building, fixture or improvement, or the repair thereof, or ten per cent of the value of such building, fixture or improvement, or the repair thereof, measured by the proportion that the work done bears to the work to be done thereon, and using the contract price or the reasonable value of the completed building, fixture or improvement, or the repair thereof, as a basis of computation of value."

The Legislature had thus used the terms "contract price of such building, fixture or improvement," "value of such building, fixture or improvement," and "the contract price or the reasonable value of the completed building, fixture or improvement." This language is quite clear and certainly would not have been abandoned by anyone who wished to require the owner to retain a proportion of the total cost of the entire project. It is of more than passing significance then that the Legislature decided to and did eliminate all of these terms. The 1961 amendment contains no language of similar import. According to its provisions, the owner should retain:

". . . [T]en per cent (10%) of the contract price to the owner, his agent, trustee or receiver of such work, or ten per cent (10%) of the value of same, measured by the proportion that the work done bears to the work to be done, using the contract price or, if none, the reasonable value of the completed work as a basis of computing value."

The majority construe "work" to mean all work to be done in completing the building, fixture or improvement. This, it seems to me, is a distortion of the statute. Subject to certain limitations not material

here, the term "work" is defined in Art. 5452 as "any construction or repair" of any house, building, improvement, levees, embankments, or railroad "under and by virtue of a contract with the owner, owners, or his or their agent, trustee, receiver, contractor, contractors, or with any subcontractor." The definition is thus stated in terms of the nature of the activity, the type of permanent addition to real property that is involved, and the parties to the contract under which the activity is conducted. *Any* construction or repair of any of the designated improvements under a contract with the owner, his contractor or subcontractor, constitutes "work."

There is nothing in the definition concerning the scope or extent of the activity, and other parts of the statute indicate that the Legislature did not think of the term as including all or any particular part of an entire project of construction or repair. Art. 5452 refers to "all or part of the work required by an original contract." Art. 5455 provides that an affidavit claiming a lien must contain "a general statement of the kind of work done or materials furnished by him, or both. It shall not be necessary to set forth the individual items of work done or material furnished or specially fabricated." In Art. 5467 the Legislature spoke of "all work called for by the contract between the owner and the original contractor."

Under the statutory definition, the term "work" does not embrace everything that is done in the course of an entire project. Prior to the 1961 amendment the retainage was measured by "contract price of the building." After the 1961 amendment it is measured by the contract price "of such work" to the owner. According to the introductory clause, moreover, the duty of the owner with respect to statutory retainage arises "whenever work is done whereby a lien or liens may be claimed under Article 5452." The words "such work" later in the statute obviously refer to any work that is done whereby a lien or liens may be claimed under Art. 5452. It seems

fairly obvious, moreover, that there will be no contract price "to the owner" except where he is a party to the agreement. So the "contract price" used to measure the retainage is the price set out in a contract to which the owner is a party. The other party to such an agreement is, by definition, an original contractor, and the statute expressly provides that there may be one or more original contractors. Art. 5452.

In the light of these provisions, I am satisfied that the word "work" as used in Art. 5469 means the construction and repair done and to be done under an original contract with the owner. It also seems clear to me that the Legislature intended for each original contract to be treated separately in determining the owner's duty and liability under Art. 5469. Any doubt in this respect should be dispelled by the provisions of Art. 5472d, which was also adopted as a part of the 1961 Act. It is there provided that whenever "an original contractor" furnishes the owner a payment bond "in a penal sum not less than the total of the original contract amount" and the bond is approved by the owner and filed in the office of the county clerk as therein provided, "the owner shall be relieved of all obligations under Articles 5454, 5463 and 5469 hereof." Since a payment bond furnished by an original contractor will not protect the creditors of another original contractor, the lawmakers must have contemplated that the terms of Art. 5469 would be applied to each original contract separately.

Under the Court's interpretation of Art. 5469, an original contractor who has fully performed by constructing the foundation of the building and who has paid all bills incurred by him cannot be paid in full until 30 days after the painting contractor has finally completed the last work on the building. This may be several years after the work of the foundation contractor was completed. During that period the foundation contractor must protect himself by filing claims and perfecting liens. Otherwise he will run the risk of losing the entire ten

per cent withheld from the price stipulated in his contract to those who furnished material to the insolvent painting contractor. Even if he files claims and perfects liens, he may lose the entire ten per cent to artisans and mechanics employed by the painting contractor.

I am not entirely clear as to the effect of the today's holding on the contractor who gives the bond contemplated by Art. 5472d when other original contractors on the same project do not furnish bond. As I interpret the majority opinion, Art. 5469 makes the owner responsible to any supplier for up to ten per cent of the cost of the entire building until thirty days after the last work on the building is done. If the Court adheres to that construction of the statute, the foundation contractor in our example would gain nothing by executing the bond contemplated by Art. 5472d. The owner could not afford to pay him promptly after completion of the foundation work, because the owner would know that, despite the provisions of Art. 5472d, he could be held liable to any supplier for up to ten per cent of the cost of the entire building until thirty days after the work of the painting contractor was completed. Art. 5472d would thus be rendered meaningless where there are several original contractors and some but not all furnish payment bonds. On the other hand, the Court might hold that Art. 5472d overrides Art. 5469 in the situation just mentioned. We would thus be saying that the Legislature intended to provide that one original contractor might, by giving a bond for the protection of his workmen and suppliers, deprive the creditors of another original contractor of part of the protection otherwise afforded them by Art. 5469. That, it seems to me, is absurd.

In my opinion the Court of Civil Appeals at Austin correctly interpreted the statute in Lennox Industries, Inc. v. Phi Kappa Sigma E. & B. Ass'n, Tex.Civ.App., 430 S.W.2d 404 (no writ). The court mentioned the contrary holding by the Court of Civil Appeals at Corpus Christi in Hunt Developers, Inc. v. Western Steel Co., Tex.Civ.App., 409 S.W.2d 443 (no writ), but concluded that the earlier decision is unsound for the following reasons:

Art. 5452, subd. 2, par. e, V.T.C.S., defines "original contractor" and "original contract" and provides that "There may be one or more original contractors."

Art. 5469, supra, provides that it shall be the duty of the owner to retain "10% of the contract price to the owner . . . to secure . . . the payment of . . . claimants furnishing material . . . for any contractor . . .."

This Article prior to its amendment in 1961 provided, in part, that the owner should retain ". . . ten per cent of the contract price of such building, fixture or improvement . . .."

The change in legislative language implies change in meaning. This change, clear to us, is that the amount of required retainage is no longer necessarily measured by the contract price of the building but is measured by the contract price, one or more, to the owner. This construction of the statutes is fair to the owner, the contractors and fair to the statutory beneficiaries who deal with a particular contractor.

It seems to me that this reasoning is entirely sound. If Art. 5469 is interpreted to mean that each original contract is to be considered separately, and that the owner must retain ten per cent of the cost to him of the work under each contract until thirty days after such work is completed, the statutory scheme is workable, reasonable and fair to all parties. I would modify the judgments below to award respondents ten per cent of the cost of the work done under the original contracts between petitioners and Glenn McEntire.

GREENHILL, POPE and REAVLEY, JJ., join in this dissent.