**E. W. HAYEK et al., Appellants,**

**v.**

**WESTERN STEEL COMPANY et al.,
Appellees.**

**No. 609.**

Court of Civil Appeals of Texas,
Corpus Christi.

May 27, 1971.

Rehearing Denied June 17, 1971.

Milton W. Walton, Corpus Christi, for appellants.

Sorrell, Anderson, Sorrell & Atwill, William R. Anderson, Jr., Head & Kendrick, Michael Kendrick, Jr., Corpus Christi, for appellees.

## OPINION

BISSETT, Justice.

This case involves primarily the construction of the statutes relating to the liens of materialmen, particularly the extent of application of Art. 5469, Vernon's Ann. Civ.St.

This appeal is actually concerned with twelve separate cases that were tried together with the consent of all parties. Prior to trial of the consolidated cases, Western Steel Company had already sued Glenn McEntire, a contractor, and had recovered judgment against him for a specified sum of money. Here, Western Steel Company, as plaintiff, sued E. W. Hayek and other landowners, wherein plaintiff sought to obtain a personal judgment against the landowners, and to foreclose its asserted statutory materialmen's liens against the affected land of each landowner-defendant. Gulf Concrete Company intervened and sued McEntire on its account and also sued the landowner-defendants, whereby it, too, sought a personal judgment against them and to foreclose its asserted statutory materialmen's lien against the affected land of each landowner-defendant. The landowner-defendants filed a cross-action against McEntire, praying for a recovery against him in the event the intervenor prevailed against them.

Trial was to the court without the aid of a jury, which resulted in a judgment for Gulf Concrete Company, intervenor, against McEntire for a certain sum of money, plus attorney's fees in a stated amount, and in a judgment for Western Steel Company, plaintiff, against each named landowner-defendant for a specified sum of money, and foreclosing its materialmen's lien against certain lands described therein, and in a judgment for Gulf Concrete Company against each named landowner-defendant for a specified sum of money, and foreclosing its materialmen's lien against certain lands described therein. Judgment over and against Glenn McEntire was decreed in favor of the landowner-defendants on their cross-action.

All of the defendants (save and except Glenn McEntire) have duly perfected their appeal to this Court. We modify the judgment of the trial court, and as modified, affirm. The landowner-defendants will be referred to as appellants and the plaintiff and the intervenor will be referred to as appellees.

Each of the appellants owned one or more tracts of land upon which he constructed a building. Each of them, at various times, by virtue of a separate agreement, entered into a contract with Glenn McEntire for the construction of a concrete foundation for a building with respect to each separately owned tract of land. None of the appellants entered into a construction contract with a general contractor for the construction of his improvements at a fixed contract price, but each appellant acted as his own builder for the particular building on his own land. The contracts with McEntire are the only contracts that are reflected by the record; presumably the other phases of the construction work were performed by third party contractors; the briefs and stipulations indicate as much. None of the affected properties constituted the homestead of any appellant.

The steel and concrete materials incorporated in the foundations were purchased by McEntire from Western Steel Company and Gulf Concrete Company, respectively. He did not pay them in full for these items.

A detailed stipulation was made wherein the description of each tract of land, the owner thereof, the total construction cost of each building, the date each building was completed, the contract price for each foundation, the date of delivery of the materials for each foundation, the amount of unpaid claims for each foundation, the date notices of unpaid claims were sent to each owner, the dates of filing and recording data of lien affidavits, and the dates that two (2) copies of the lien affidavits were sent to the owner, were each and all agreed to by and between all parties.

From the stipulation as filed, from agreements of counsel and from the evidence contained in the record, it is undisputed that (a) the total cost of the construction of all the improvements built by the respective appellants amounted to $500,346.97; (b) the total of the contract prices of all the foundation work covered by appellants' contracts with McEntire amounted to $49,581.00; (c) the total of appellees' unpaid claims for the materials furnished in the construction of the foundations amounted to $20,002.87; (d) the foundations were completed less than thirty (30) days after delivery of materials therefor; (e) the foundation work was completed and each appellant paid McEntire all of the contract price therefor before the respective appellant learned that McEntire had not paid appellees; (f) both the notices of unpaid claims and the lien affidavits were given and filed, respectively, more than thirty (30) days after the foundations were completed, but less than ninety (90) days after the indebtedness therefor had accrued; (g) all said notices and lien affidavits were given and filed, respectively, before the building was completed; (h) none of the appellants retained any funds during the progress of the work on their respective building or for thirty (30) days after the work was completed; and (i) there was no agreement between appellants and anyone for any retainage of funds.

Extensive findings of fact and conclusions of law were made and filed by the trial court, which findings not only incorporated therein the aforesaid stipulation, but, in addition thereto, found (among other findings):

"(12) Both Gulf Concrete Company and Western Steel Company complied with the notice provisions of Article 5452, et seq., V.A.T.C.S., and gave timely, adequate and proper notices of their claims to the owner-defendants with respect to their individual properties, and such notices were given via U. S. certified mail, return receipt requested.

(13) Within ninety (90) days from the date their claims accrued for the materials and labor furnished to the properties owned by the respective owner-defendants, both Western Steel Company and Gulf Concrete Company filed lien affidavits in the proper records of San Patricio County, Texas, claiming a lien against those properties listed on 'Stipulation Exhibit A' opposite which on said exhibit it is shown that Western Steel Company and/or Gulf Concrete Company claimed an indebtedness."

The following conclusions of law (among others) were made and filed by the trial court:

"(3) Each of the lien affidavits filed by Western Steel Company and each of the lien affidavits filed by Gulf Concrete Company were properly and timely filed and adequate notices were properly and timely given; and such lien affidavits created valid liens against the properties of the respective owner-defendants and against the fund which they should have retained pursuant to Article 5469, V.A.T.C.S., to secure payment by such owner-defendants for materials and labor furnished by Gulf Concrete Company and Western Steel Company.

(4) Such lien affidavits complied in every respect with Articles 5453 and 5455, V.A.T.C.S.

(5) Gulf Concrete Company and Western Steel Company gave each and all of

the notices required by Article 5453 and complied with the provisions of Article 5456, V.A.T.C.S.

(6) Each of the owner-defendants with respect to their own properties were obligated and required under Article 5469, V.A.T.C.S., to retain during the progress of the work on their respective properties and for thirty (30) days thereafter, ten per cent (10%) of the value of such work shown on 'Stipulation Exhibit A' and designated 'Total Cost of Work (Entire House)'."

\* \* \* \* \* \*

"(10) Owner-defendants were required to retain ten per cent (10%) of the Total Cost of Work (Entire House) during the progress of the construction of all such improvements and for thirty (30) days after the date of completion of the entire house, which completion dates are shown on 'Stipulation Exhibit A' under the column designated 'Date of Completion (Entire House)'.

(11) The 10% retainage which owner-defendants did not but should have retained was to secure payment of the amounts claimed by Gulf Concrete Company and Western Steel Company and any other claimants complying with the provisions of Article 5452, et seq., V.A. T.C.S."

Under the record before us, none of the findings of fact are challenged by a point of error. The conclusions of law quoted above are challenged.

In awarding judgment against appellants, the trial court held that each appellant was required by Art. 5469, V.A.C.S., to retain during the progress of the work and for thirty days thereafter 10% of the total cost of the work for his entire building, not just 10% of the contract price for the foundation therefor. Under appellees' theory, each appellant should have retained 10% of the total cost of his building, which would have been more than enough with which to have paid appellees for their claims. Under appellants' theory, the most that was required was that each appellant retain 10% of his contract price with McEntire, which would have been insufficient to have paid appellees the full amount of their claims.

Article 5452, V.A.C.S., provides, in part, that any person or firm who furnishes material for the construction of a building shall have a lien upon the improvements and property of the owner "upon complying with the provisions of this Chapter". Appellees fall within the class covered by this Article.

Article 5453, V.A.C.S., prescribes the procedures for the fixing and securing of the lien provided by Article 5452, V.A.C.S. Appellees fully complied with the provisions of this Article for the fixing and securing of their materialmen's lien against the described property owned by each appellant.

Articles 5463 and 5469, V.A.C.S., contain special provisions relating to the owners' liability to those other than original contractors under certain circumstances. Article 5469 requires an owner to retain ten per cent (10%) of the contract price for thirty (30) days after the work is completed for the protection of laborers and materialmen "whenever work is done whereby a lien or liens may be claimed under Article 5452"; the statute also provides:

" \* \* \* All persons who shall send notices in the time and manner required by this Act and shall file affidavits claiming a lien not later than thirty (30) days after the work is completed shall have a lien upon the fund so retained by the owner, his agent, trustee, or receiver; with preference to artisans and mechanics, who shall share ratably therein to the extent of their claims; with any remaining balance to be shared ratably among all other participating claimants. If the owner, his agent, trustee, or receiver refuses or fails to comply with the provisions of this Article, then all claimants complying with the provisions of

this Act shall share ratably among themselves, with preference to artisans and mechanics as above specified, liens at least to the extent of the aforesaid fund of ten per cent (10%) which should have been retained, as against the house, building, structure, fixture, or improvement and all of its properties, and on the lot or lots of land necessarily connected therewith, to secure payment of such liens."

When notices of the claims are sent to the owners under the provisions of Article 5452, the owners are, by Article 5463, required to retain the amounts of money necessary to pay said claims. Article 5463, in part, provides:

" * * * The owner shall in no case be required to pay, nor his property be liable for, any money, other than that required to be retained by him under the provisions of Article 5469 hereof, that he may have paid to the contractor before he is authorized under this Article to retain the money. If the notices prescribed in Article 5453 have been received by the owner and claimant's lien has been secured in accordance with Article 5453 and the claim or any part thereof is reduced to final judgment, the owner shall be required to pay, and his property shall be liable for, any money that he may have paid to the contractor after he is authorized to retain such money by virtue of this Article, as well as any money he is required to retain by the provisions of Article 5469 hereof."

■ We shall first consider appellants' third point of error, wherein they complain that judgment should not have been rendered against some of them for the reason that the lien affidavits were not filed within thirty (30) days after date of completion of the foundation work. As the owners (appellants) failed to comply with the provisions of Article 5469, V.A.C.S., concerning the statutory retainage, and since appellees complied with the provisions of Articles 5452 and 5453, V.A.C.S., appellees were entitled to a recovery against the appellants to the extent of their proper portion the ten per cent (10%) fund which should have been retained, and to a lien as against the building and the lot or lots of land necessarily connected therewith, to secure payment of such lien, as provided by Article 5469, V.A.C.S. The contention of appellants is contra to the holding of our Supreme Court in General Air Conditioning Company v. Third Ward Church of Christ, 426 S.W.2d 541 (Tex.Sup.1968); Appellants admit this in their brief. Appellants' third point of error is overruled.

■ Appellants, by their first point of error, contend that the trial court erred in holding that each appellant and his property is liable to appellees for the cost of the materials furnished McEntire limited to 10% of the total cost of his entire building.

At the outset, we note that there is a conflict in the decisions of the Courts of Civil Appeals on the law question presented by this point of error. This court, in Hunt Developers, Inc. v. Western Steel Company, 409 S.W.2d 443 (Tex.Civ.App., Corpus Christi, 1966, n. w. h.), where the owner failed to retain any funds from anyone during the course of construction of eight houses, held:

" * * * Article 5469, V.A.C.S. clearly states that the owner is to retain ten per cent of the contract price. This does not refer to a particular contract, a subcontract or anything less than the contract price of the building. * * * The amendment of Article 5469 in 1961 still requires the owner to withhold ten per cent of the contract price to secure the payment of claimants who qualify under this Act. We hold that Article 5469 requires the owner to retain ten percent of the entire contract price of the building."

The Austin Court of Civil Appeals, in Lennox Industries, Inc. v. Phi Kappa Sigma E. & B. Ass'n, 430 S.W.2d 404 (Tex.Civ. App., Austin 1968, n. w. h.), held that the

requirement to retain ten per cent (10%) of the contract price was limited to each separate contract and did not extend to ten per cent (10%) of the entire construction contract price of the building.

In 1961, Articles 5452, 5453, 5454, 5455, 5456, 5463, 5467, 5468 and 5469 of Title 90 of the Revised Civil Statutes of Texas were amended, Articles 5457, 5461, 5462 and 5465 were repealed, and a new Article designated as Article 5472d was added. In doing so, the Legislature recognized that the existing lien laws were archaic, to say the least. The real reason for the enactment of the Act (Chapter 382, 57th Leg., pp. 863–872), and the legislative purpose therefor, is expressed by the Legislature itself, where in Section 14 thereof, it is stated:

"The fact that the existing Statutes governing mechanics and materialmen liens are antiquated, vague, and ambiguous, and have been the subject of numerous conflicting court decisions resulting in *loss of liens through technicalities*, creates an emergency and an imperative public necessity. * * *" (Emphasis supplied.)

■ These lien laws as they existed prior to the amendment were, for the most part, enacted at different times, and were thereafter amended piecemeal, so that, by 1961, the extent of coverage of the several statutes was somewhat uncertain and the procedure required to perfect the liens was burdensome. The amendment was accomplished, not by amending each individual statute by a separate bill or enactment as had been the custom of the past, but by enacting a new, comprehensive Act. In effect, the passage of the Act created a new mechanics' and materialmen's law that retained the desirable features of prior statutes and eliminated the undesirable features thereof. All of the Articles that were retained, as well as the new addition (Article 5472d), now constitute integral parts of a single Act, with each Article complementing the others. All of the Articles should be construed together in such a way as to achieve the presumed legislative intent to create a consistent, workable and sensible set of regulations. A construction which creates a conflict among the various parts of the legislative plan is, if possible, to be avoided. Trinity Universal Insurance Company v. Palmer, 412 S.W.2d 691 (Tex.Civ. App., San Antonio 1967, wr. ref. n. r. e.).

■ Undoubtedly, the primary purpose of the Legislature in enacting the present mechanics' and materialmen's lien law (Articles 5452–5472e, V.A.C.S.), was to protect contractors, subcontractors, laborers and materialmen by establishing procedures by which they may perfect liens against the property of the owner and impound, in his hands, funds due the original contractor. However, protection is also afforded the owner. Under the present law, as well as under the old statutes, the owner cannot be held liable for more than the contract price of the entire improvement if he complies with the statutes. If the owner does not do so, he assumes the risk of paying more than his contract price. The new Act recognized that situations might arise that would work a hardship on the owner to require him to comply with the provisions of certain of the lien statutes; as a result, Article 5472d, V.A.C.S., was added to the body of such lien laws whereby the contractor could furnish a bond in favor of the owner in the required sum of money, to be filed for record as directed, which would relieve the owner of all obligations under Articles 5454, 5463 and 5469, V.A.C.S. Thus, the owner is given the power to protect himself and his property from liability by demanding that the contractor furnish a payment bond. Such action by the owner would not affect a lien claimant in any way. No such power exists for the benefit of any laborer or materialman and the only protection afforded them for unpaid claims is found in the Act itself. If the owner does demand such a bond, then the lien claimants may enforce their claims against the surety on such bond. Therefore, there is a provision that not only insulates the

owner and his property from liability on unpaid claims, but also insures the lien claimants of payment in their claims. Only the owner can invoke the protection of Article 5472d, V.A.C.S.

We do not believe that the Legislature, in amending the lien laws, intended to narrow the applicabiltiy of the retainage provision of Article 5469, V.A.C.S., nor do we believe that it intended to reduce the area of the improvements from the completed building to a segment thereof embraced by the terms of a particular contract for a limited phase of the construction of the entire building.

Under the old statute, whenever any mechanic or artisan performed any labor or service for any contractor or subcontractor, etc., in the construction of any building, house, etc, the owner was required to retain "during the progress of such work and for thirty days after the completion thereof, to secure the payment of said artisans and mechanics, ten per cent (10%) of the contract price of such building, * * *."

Under the present statute, whenever a lien is claimed under Article 5452, V.A.C.S., the owner is required to retain "during the progress of such work and for thirty (30) days after the work is completed, to secure the payment of artisans and mechanics who perform labor or service, and to secure the payment of any other claimants furnishing material, * * * for any contractor, * * * in the performance of such work ten per cent (10%) of the contract price to the owner, * * *." Under the old law, the mandatory retainage provision of Article 5469, V.A.C.S., did not extend to materialmen; this was changed by the Act of 1961.

No difficulty arises with respect to Article 5469, V.A.C.S., where the owner contracts with a general contractor for the completed improvement in his entirety at a stated contract price; there, ten per cent (10%) of the contract price must be retained by the owner for the required period of time. However, where the owner enters into more than one contract for the construction or repair of the improvements, the question arises as to whether the statute creates a liability of (a) ten per cent (10%) of each separate contract for the exclusive benefit of only the laborers and materialmen who perform under that particular contract, or (b) ten per cent (10%) of the total contract price of all contracts as to all laborers and materialmen, without regard to the particular contract under which the labor was performed and the materials were furnished. In answering this perplexing question, we consider the obvious intent of the Legislature in enacting the 1961 Amendment, the law as it existed both prior and subsequent thereto, and the cases that have dealt with the lien laws.

Under Article 5469, V.A.C.S., as it existed prior to the Act of 1961, it was settled that the owner was required to retain ten per cent (10%) of the contract price for the entire building and not just ten per cent (10%) of a particular contract covering part of the construction project or of a subcontract thereto. Miller v. Harmon, 46 S.W.2d 342 (Tex.Civ.App., Austin 1932). We see nothing in the Amendatory Act that changes the rule announced above, except to enlarge its scope so as to now include materialmen. We do not agree with the statement made in Lennox concerning the changes in language when the 1961 Act was enacted, where the court said that "This change, clear to us, is that the amount of required retainage is no longer necessarily measured by the contract price of the building but is measured by the contract price, one or more, to the owner." To us, the only change in the verbiage of the statute, as amended, is to simply enlarge the coverage by adding materialmen as beneficiaries who are now permitted to share in the retainage.

We believe that the logic and reasoning of our Supreme Court in General Air Conditioning Company v. Third Ward Church of Christ, supra, supports our po-

sition. The same is true with respect to Lane-Wells Company v. Continental-Emsco Company, 397 S.W.2d 217 (Tex.Sup. 1965), where it was said:

"The succeeding article is Article 5469. It requires an owner to retain ten per cent of the contract price of the building for thirty days after completion, * * *"

The Lane-Wells case was cited by this Court in *Hunt*. No reason exists why this Court should change its position as heretofore announced in *Hunt*. The purpose of the present mechanics' and materialmen's lien law is to protect all laborers and suppliers who perform labor and furnish materials on a construction project in its entirety. If the Legislature had intended to limit the extent of the statutory retainage to a particular contract affecting an integral part of the construction work, it would have said so in plain, concise language. We perceive no valid reason why a landowner-builder, who is developing his own property, and who is required to withhold ten per cent (10%) of the entire contract price where he uses a general contractor to accomplish his purpose, should be affected differently where he chooses to build the same improvements by employing several contractors for various stages of the construction. The retainage requirement is for the protection and benefit of the laborers and materialmen, not the owner. It makes no difference to the laborers and materialmen whether the improvements are built under one general contract or under any number of separate contracts; in any case they are looking primarily to the contractor that hires them or purchases from them for payment of their labor performed and materials sold, knowing that if they are not so paid by the contractor, that there is in existence a fund of ten per cent (10%) of the total construction costs that the Legislature has deemed to be reasonably sufficient to pay their unpaid claims. The owner should not be permitted to retain just ten per cent (10%) of each separate contract; if he retained ten per cent (10%) of *all* contracts, there would be no danger to the protected classes because the full amount of the required fund, based on one hundred per cent (100%) of the total cost, would have been retained. But, suppose a construction cost of $100,000.00 that is contracted out on five separate contracts of $20,000.00 each, and retainage was made on only one of the contracts. Under the holding by the Austin Court in *Lennox* the protective fund would be $2,000.00, which would inure to the benefit of only those persons who performed labor or furnished material under that particular contract. We do not believe that Article 5469, V.A.C.S., should be given such a narrow construction. The general classes to be protected are *all* mechanics, artisans and materialmen who perform labor and furnish materials for the construction project in its entirety, and not to a particular segment thereof. The coverage extends to all those persons named therein as beneficiaries of the fund, without regard to whether there are one or more contracts, be the beneficiary carpenter, plumber, painter, or roofer, or materialman for any part or phase of the construction, be it foundation, framing, roofing, or otherwise. This can only be accomplished if the cost of the completed work is used as the basis for the amount of money to be retained.

It is our duty to give Article 5469, V.A.C.S., the meaning that the Legislature intended it to have so far as it lies within our ability to do so. Standard v. Sadler, 383 S.W.2d 391 (Tex.Sup.1964). Viewing the article from its four corners, and interpreting it in context with the provisions of the other articles that now make up our present mechanics' and materialmen's lien law, we have concluded and so hold, that Article 5469, V.A.C.S. requires that the owner retain ten per cent (10%) of the contract price for the completed improvement, and not just ten per cent (10%) of each separate contract pertinent thereto.

Appellants violated Article 5469, when they failed to retain ten per cent (10%) of the total cost of the improvements as measured by the total of all the various contracts involved, thus invoking the liability prescribed by our lien statutes. The amount of appellees' claim against each appellant is less than ten per cent (10%) of the total cost of the improvement. There is no evidence of other claims. Therefore, since appellees belonged to the class identified in Article 5452, and since they fixed and secured their liens under the provisions of Article 5453, and as the owner did not retain any funds in his hands during the prescribed period of time as set out in Article 5469, the appellees are entitled to full recovery against each appellant for their unpaid claims and to a lien on his property described in the judgment to secure payment thereof. Appellants' first point of error is overruled.

■ Appellants and appellees all contend that the trial court erred in awarding appellees interest from January 1, 1970 on the several sums of money found to be due appellees. The judgment was signed and entered on October 6, 1970 and bears interest from January 1, 1970. We agree that the judgment is erroneous insofar as interest is concerned and must be modified in that respect. This is not a suit on open account, nor is it a suit on written contracts. There is no legal basis for interest on the judgment from January 1, 1970.

The record shows that the materials for the foundations for the houses were delivered by appellees to McEntire, appellants' contractor, during the period November 1968 to February 1969. The houses were completed during the period March 1969 to September 1969. Appellants argue that interest, if allowable at all, is allowable only from date of judgment. Appellees say that interest should be awarded from the 10th day of the month next following the last month in which the materials were furnished. We do not agree with the contentions of either appellants or appellees.

The authorities advanced by the parties in support of their respective positions on the interest feature of the judgment do not support them on this matter. The statutes, Articles 5452 et seq., and particularly Articles 5453, 5467 and 5469, V.A.C.S., do not provide for interest.

■ Interest, being purely of statutory origin, should not be awarded in the judicial settlement of claims, except in cases that fall within the terms of the various enactments. 33 Tex.Jur.2d, Interest, § 2, p. 64–67, and the cases therein mentioned.

Interest is defined by Article 5069–1.01, V.A.C.S. as compensation allowed by law for the use or forbearance or detention of money. The "detention" of money arises where a debt has become due and the debtor withholds payment without having a right to do so. Parks v. Lubbock, 92 Tex. 635, 51 S.W. 322 (1899).

The courts of this state recognize the difference between interest contracted for or required by statute and interest allowed as damages for the detention of money. In cases falling within the last named category it is universally held that interest is not allowed as a matter of discretion, but is due as a matter of law if the amount of recovery, whether ex contractu or ex delicto, depends on conditions existing at the due date, though unascertained and disputed up until the time of trial. In such cases interest is to be added as a matter of law by the court in entering judgment. Watkins v. Junker, 90 Tex. 584, 40 S.W. 11 (1897); Texas Company v. State, 154 Tex. 494, 281 S.W.2d 83 (1955); Reed v. Fulton, 384 S.W.2d 173 (Tex.Civ.App., Corpus Christi 1964, wr. ref. n. r. e.) and the cases cited therein; Beck v. Lawler, 422 S.W.2d 816 (Tex.Civ.App., Ft. Worth 1968, wr. ref. n. r. e.) and cases cited therein.

■ It has long been the law of this state that interest attaches whenever it is ascertained that at a particular time money ought to have been paid, whether in sat-

isfaction of a debt, as compensation for a breach of statutory duty, or for failure to fulfill the obligations of a contract. Western Union Tel. Co. v. Carver, 39 S.W. 1021 (Tex.Civ.App.1897); Howard v. Emerson, 65 S.W. 382 (Tex.Civ.App.1901).

In deciding whether or not appellees are entitled to interest we must first determine the date that appellants were obligated to pay money to appellees. There is no privity of contract between appellants and appellees, and their obligation to pay appellees' claims arises by operation of law, not by contract. The effect of appellees' pleadings and evidence in this case is to predicate as recovery on appellants' violation of Article 5469, V.A.C.S., in that they did not comply with the statutory retainage provision thereof; this violation subjected appellants to personal liability. Article 5467, V.A.C.S., prescribes the formula whereby it can be determined the exact date that the indebtedness accrues to each particular class of lien claimants; the sole purpose of this Article is to fix the date that the indebtedness accrues in order that the lien claimant may file his affidavit within the time prescribed by Article 5453, V.A.C.S.; it does not provide for interest against the owner after the indebtedness has accrued.

Under the express provisions of Article 5469, V.A.C.S., the owner is required to retain in his hands during the progress of the work and for thirty (30) days after the work is finished the required retainage to pay the class of persons therein enumerated. He could not safely pay any of such claimants until the expiration of said thirty (30) day period. The obligation to pay appellees was primarily that of McEntire, the contractor, not of appellants; but, when McEntire defaulted in such payment, then the contingent liability of the owner, appellants, came into operation. However, the date when appellants were required to pay appellees for the materials was automatically extended until the end of the said thirty (30) day period.

Applying the law as set out in the foregoing cases to the facts and circumstances of this case, we hold that appellants owed appellees the full amount of their claims and that these amounts of money became due and payable, under Article 5469, V.A.C.S., when considered in conjunction with Article 5463, V.A.C.S., on the thirty-first (31st) day after the respective buildings were completed, and interest is allowable from said date for the detention of money by appellants, all such interest to be calculated separately as to each appellant.

The judgment of the trial court is modified by deleting that portion awarding interest thereon from January 1, 1970 at the rate of 6% per annum, and providing, in lieu thereof, that appellees recover interest at the rate of 6% per annum on the amount of their claims against each appellant from and after the thirty-first (31st) day following the date that the building of each appellant was fully completed, the completion dates thereof being set out in column ·13 of the stipulation appearing in the record.

Costs of this appeal are assessed one-half against appellants and one-half against appellees.

As modified, the judgment of the trial court is affirmed.