Alfonso M. **GONZALEZ** et al.,
Appellants,

v.

Juan M. **GONZALEZ,** Individually and as Independent Executor of the Estate of Isabel M. Gonzalez, Deceased, Appellee.

No. 1139.

Court of Civil Appeals of Texas, Corpus Christi.

April 28, 1977.

Rehearing Denied June 9, 1977.

Ken Hannam, Mahoney, Shaffer, Hatch & Layton, Corpus Christi, for appellants.

Michael W. Williams, Corpus Christi, for appellee.

## OPINION

BISSETT, Justice.

This is a suit for partition of properties devised and bequeathed by Juan A. Gonzalez and wife, Isabel M. Gonzalez, both deceased, to their seven children. Alfonso M. Gonzalez, Manuel M. Gonzalez, Jose M. Gonzalez, Arnolfo M. Gonzalez, Adolfo M. Gonzalez and Rosa M. Gonzalez are plaintiffs. Juan M. Gonzalez is defendant. The parties are the sole and only surviving children of Juan A. Gonzalez, who died August 25, 1954, and wife, Isabel M. Gonzalez, who died on May 6, 1968, and are also the sole beneficiaries under the joint and mutual will of Juan A. Gonzalez and wife, Isabel M. Gonzalez.

Following a jury trial, judgment was rendered which partitioned the properties involved, settled all accounts between the parties, and closed the administration on the Estate of Juan A. Gonzalez and on the Estate of Isabel M. Gonzalez. Parts of the judgment were favorable to plaintiffs and parts were favorable to defendant. The plaintiffs, hereinafter sometimes called the "six children," and the defendant, hereinafter sometimes called "Juan M.," have appealed from those portions of the judgment which were adverse to them.

Since this is the third time that a dispute between the parties with regard to the properties inherited by them from their father and mother has reached this Court, a background statement is deemed appropriate.

Juan A. Gonzalez and wife, Isabel M. Gonzalez, executed a joint and mutual will on November 1, 1941. Following the death of Juan, the will was duly admitted to probate as his last will and testament. All property acquired by Juan and Isabel was community property. Isabel, who qualified as independent executrix of Juan's Estate, elected to take under the will. Following Isabel's death, the will was admitted to probate as her last will and testament. Juan M., the defendant in this case, qualified as independent executor of her estate.

On October 25, 1968, the plaintiffs demanded a partition and distribution of all properties belonging to the estates of their deceased father and mother. Their demand was refused by the defendant, who was then in actual possession of all properties owned by the estates of both Juan and Isabel. He remained in absolute possession and control of such properties, and contended that as independent executor of the estate of Isabel, he had full authority over and was entitled to administer, not only the property belonging to her estate, but all property belonging to the estate of Juan as well. He argued that it was the intent of the makers of the joint and mutual will that he, as executor, should manage the entire estate until he determined whether any advancements or loans were made to the children by his mother during her administration of Juan's estate, and, when this had been done, he then had the exclusive right to distribute to each of his brothers and sister his or her equal 1/7th part of the properties remaining.

The six children filed suit on November 22, 1968, wherein they sought a declaratory judgment for the construction of the will and for a judicial partition of the properties owned by Juan and Isabel. The trial court severed the action for partition from the cause and proceeded to trial on the action for declaratory judgment to construe the will. Judgment was rendered favorable to Juan M., and the trial court, in its construction of the will, decreed: 1) the makers of the will did not intend to create a testamentary trust; 2) there can exist but one estate under the will; 3) such estate should be administered by "an Independent Executor or Executrix"; and 4) "neither under the terms of such will, nor under the law, can this Court in this declaratory judgment or-

der a partition of such estate." Following an appeal to this Court, the judgment of the trial court was reversed and rendered. See *Gonzalez v. Gonzalez*, 457 S.W.2d 440 (Tex.Civ.App.—Corpus Christi 1970, writ ref'd n. r. e.), hereinafter referred to as the "*First Gonzalez Case*."

This Court, in the *First Gonzales Case* construed the will as follows: 1) two estates were created by the will: a) one being the Estate of Juan which consisted of all the property owned by him and Isabel at the time of Juan's death, and b) the other being the Estate of Isabel, which consisted only of the property, if any, acquired by her in any capacity after Juan's death; 2) the will created a testamentary trust for the benefit of Isabel and the seven children of Juan and Isabel, and devised all of the property owned by Juan and Isabel at Juan's death to Isabel and the children in eight equal parts, one part to Isabel and one part to each child; and, 3) Isabel, by qualifying as independent executrix of Juan's Estate, also became trustee of all properties owned by her and Juan at the death of Juan. In line with that construction of the will, this Court then held: 1) the trust had terminated prior to the time suit was filed (November 22, 1968); 2) the trust properties were not part of Isabel's Estate; 3) the legal and equitable title to all properties owned by Juan and Isabel at Juan's death had then vested in the seven children of the decedents; and 4) Juan M. qualified as executor of Isabel's Estate, but did not qualify as executor of Juan's Estate.

The decision of this Court in the *First Gonzalez Case* became final on December 9, 1970. Subsequently, Juan M., who claimed that the will of his parents excluded a judicial partition and empowered him to partition such properties, filed in the partition suit then pending a duly executed and acknowledged instrument denominated by him as a "Trustee-Executor's Deed." He purported to partition the subject properties by setting apart certain lands to plaintiffs herein, jointly, for their respective share of the land partitioned, and by setting apart to himself certain lands for his share thereof. Plaintiffs rejected such purported

partition and attacked the deed as being void. A trial ensued. Judgment was then rendered, which, among other things, decreed that Juan M. had the sole right, authority and responsibility to partition the properties. This Court reversed the judgment of the trial court and remanded the cause with instructions. See *Gonzalez v. Gonzalez*, 469 S.W.2d 624 (Tex.Civ.App.—Corpus Christi 1972, writ ref'd n. r. e.), hereinafter referred to as "the *Second Gonzalez Case*." There, we held that the attempted partition by Juan M. was invalid, that the "Trustee-Executor's Deed" was void, and that the properties involved, all of which were owned by Juan and Isabel at the time of Juan's death and none of them were acquired by Isabel subsequent to the death of her husband, were owned by the seven children of the decedents "as tenants in common upon the termination of the trust," which occurred at Isabel's death.

Plaintiffs, in their fourth amended original petition (their trial pleading) sought to recover from Juan M. the reasonable value of the use of rents and revenues on their portion of the properties during the period when the same was allegedly wrongfully withheld from them by Juan M.; they asked that the court order a partition and distribution of all of said properties, and to make any and all adjustments which it may, in equity, find to exist; that they be awarded interest on all rents and revenues accruing to their share of the properties from May 7, 1968 to date of judgment; and that they recover all court costs.

Juan M., in his answer and cross action, alleged that until the will was construed by this Court in the *First Gonzalez Case*, there existed a bona fide dispute as to the true import, extent and meaning of the will, including his power and authority thereunder. He further alleged that plaintiffs were not entitled to possession and control of any of the properties until the decision of this Court in the *Second Gonzalez Case* became final, and that all of his acts in connection with the management of such properties were performed in his capacity as independent executor of the Estate of Isa-

bel Gonzalez, and were done for the benefit of plaintiffs; that plaintiffs, in demanding that he partition the properties in their letter of October 25, 1968, are now estopped to deny that they intended for him to manage and control the properties until such partition could be accomplished; that he was "induced" to become the executor because of the language of the will and that the properties should bear the cost of their care and upkeep; that he had equal right to possession, management and control of the properties, for which he was entitled to a credit for all expenses, charges and debts incurred in the maintenance and protection of the properties; and, that he was justly entitled to reasonable compensation for personal services performed by him in the management of the properties.

The jury, among other findings, found: that some of the plaintiffs requested Juan M. to take possession and control of the properties; that the purchase of an automobile, its cost of operation and insurance thereon, attorney's fees incurred in construing the Will of Juan A. and Isabel Gonzalez, accounting fees, expenses of notifying tenants to vacate, and miscellaneous expenses had been necessarily incurred by Juan M. in the management, maintenance, care, and preservation of the properties involved. The jury then awarded a specific amount of money to be allowed Juan M. for each category of the expenses. The jury also determined that Juan M. and his wife should be allowed compensation for various services furnished by them in connection with the management and preservation of the properties, including the payment of payroll taxes thereon. In that regard, the jury determined that it was necessary in the management, maintenance, care and preservation of the properties that the following acts be performed: that Juan M. employ someone as bookkeeper, be available in the office to answer phone calls, and handle daily inquiries and complaints in the management, maintenance, and preservation of the properties; that a manager or supervisor of the rental business for the properties was required; that it was necessary that Genevieve Gonzalez, the wife of Juan M.,

perform the services of bookkeeper and receptionist, and that Juan M. provide the services of manager or supervisor. The jury also found that $31,200.00 was reasonable compensation to him for management of the properties, and further found that it was necessary for Juan M. to pay "payroll taxes" on the money paid to Genevieve Gonzalez for her services.

Judgment was signed on February 26, 1976, whereby: 1) certain real properties were set apart in severalty to each of the parties as their fair share of the properties partitioned; 2) certain parcels of land were ordered sold by the Receiver and the proceeds expended in accordance with the orders of the trial court; 3) defendant was allowed credits for certain expenses incurred in the maintenance of the properties and in renting the same, but was charged personally with six-sevenths (⁶/₇) of: 1) commissions on rentals; 2) attorney's fees paid after the opinion was handed down in the *First Gonzalez Case*; 3) all fees and compensation which he paid to himself for managing the properties; and 4) payroll taxes which were paid because of such compensation. The total charge to defendant was $39,229.63. The court costs incurred since the decision in the *Second Gonzalez Case* became final were charged equally to all parties. No interest was charged to defendant. Other adjustments, about which there are no complaints, were also made in the judgment.

It is conclusively established by the evidence that all expenditures were made from moneys that were received by Juan M. as rents from the properties, or from funds that were on hand when he qualified as independent executor of Isabel's Estate. The expenditures which plaintiffs say should have been charged to Juan M., individually, were in payment of: 1) attorney's fees incurred in the construction of the will of Juan and Isabel; 2) bookkeeping and telephone answering services, all payroll taxes, purchase of an automobile, operating costs of and insurance on the automobile, accounting fees, notifying tenants to vacate the premises that they were renting, and

miscellaneous expenses. The total of all expenditures which were allowed by the trial court amounted to $56,701.51. Plaintiffs, in effect, were charged with six-sevenths (⁶⁄₇) thereof as their fair share of the cost of renting the properties, their care and upkeep. That action by the trial court is attacked by plaintiffs in their first twenty-two points of error.

At all times pertinent to this appeal, defendant had exclusive control of substantially all of the properties that were eventually partitioned by the trial court. Technically, from May 6, 1968, when the trust which was created by the joint and mutual will terminated, until February 26, 1976, when the judgment which has been appealed was signed by the trial judge, an undivided seven-eighths (⅞) interest in the properties was owned by the parties to this appeal in their individual rights as tenants in common, and the remaining one-eighth (⅛) was owned by the Estate of Isabel M. Gonzalez, Deceased. The qualification by Juan M. as independent executor of Isabel's Estate, and the power and authority which he had by virtue thereof, affected only the one-eighth (⅛) undivided interest owned by Isabel's Estate. It did not affect the remaining undivided seven-eighths (⅞) interest.

■ There is no question but that Juan M., in his capacity as independent executor of Isabel's Estate, had the authority to incur expenses reasonably necessary to properly accumulate and preserve the properties belonging to her estate, including the incurring of reasonable attorney's fees, court costs and expenses of litigation which related to the suit for the construction of the will of Juan and Isabel. See *Humane Society of Austin and Travis County v. Austin National Bank*, 531 S.W.2d 574 (Tex.Sup. 1975). There is no contention that such expenses were not reasonable.

Special Issues 40, 42 and 43 relate to the allowance of attorney's fees; however, each *issue* raises a separate point, i. e., should attorney's fees be allowed "in connection with the probate of the will of Isabel and other services related to such probate," or "for the general care of such property", or for "construing the will." The only Special Issue which is attacked is No. 43, which relates to attorney's fees for construing the will. The construction of a will (where serious questions are presented) is normally an incident to the administration of the estate, and need not result in litigation testing the extent of the executor's authority. In fact, it seems probable that the trial court disallowed the attorney's fees of Juan M. for the defense of his authority since the court also assessed the attorney's fees which accrued after the *First Gonzalez Case* against Juan M. The credit for attorney's fees in the suit to construe the will was proper.

The trial court did not abuse its discretion in allowing a credit for all the expenses that were found to be necessary in the care, maintenance and preservation of properties which belonged to Isabel's Estate. The difficulty here presented is that no issue was requested and none was submitted which separately asked for a determination of the expenditures insofar as they pertained to the undivided one-eighth (⅛) interest in the properties belonging to Isabel's Estate. The issues asked for a determination of all expenses, which included those which affected the seven-eighths (⅞) jointly owned property as well as the one-eighth (⅛) owned by Isabel's Estate.

■ Juan M., in making the contested expenditures, was acting in a dual capacity, i. e., that of executor and that of tenant in common. His actions were in good faith and in accordance with his interpretation of the power and authority of the will. In this, he had the tacit approval and the authority of two trial judges, and it was not until the decision by this Court in the *First Gonzalez Case* became final that he was informed otherwise. Plaintiffs, in their brief, do not by reference to the record, advise this Court of the expenditures which were made from May 7, 1968 until the date the decision by this Court in the *First Gonzalez Case* became final, nor do they make special reference to the expenditures which were made subsequent to that date. The

statement of facts contains 1178 pages of testimony, and hundreds of pages of exhibits. This Court should not be required to search the record and determine the expenses that were incurred prior to the date the decision in the *First Gonzalez Case* became final, and those that were incurred afterwards. We, therefore, treat the expenditures as did the trial court, and consider all of them as being made by a person who was both an executor and a tenant in common during the entire period of time in question.

■ The duty to preserve the common property rests on all of the tenants in common. Since the care, maintenance, upkeep and preservation of the property rests upon the owners collectively, a tenant in common who expends common funds for the necessary or proper preservation of the common properties is entitled in a judicial partition of the jointly owned properties to have all such expenditures charged to the tenants in common in accordance with their pro-rata ownership. *Wooley v. West*, 391 S.W.2d 157 (Tex.Civ.App.—Tyler 1965, writ ref'd n. r. e.); *Poenisch v. Quarnstrom*, 386 S.W.2d 594 (Tex.Civ.App.—San Antonio 1965, writ ref'd n. r. e.).

■ We hold that the evidence fully supports the answers by the jury that the several sums of money expended by Juan M. for bookkeeping and telephone answering services, payroll taxes to persons other than himself, purchase of an automobile, operating costs of and insurance policy on the automobile, accounting fees, notifying tenants to vacate, and miscellaneous expenses, were reasonably necessary for the care, upkeep and preservation of the properties owned by the parties as tenants in common. The plaintiffs are required, on partition of the properties, to each bear one-eighth (⅛) of such expenses. The fact that compensation in the total sum of $16,-800.00 was paid to Genevieve Gonzalez, wife of Juan M., for bookkeeping and telephone answering services is immaterial. She rendered valuable services to all parties, plaintiffs and defendant. Those services were reasonably necessary. All parties should pay their fair share of such expenses. The judgment, in effect, correctly required that all parties contribute equally in the payment of the expenses which plaintiffs contend should have been charged to Juan M. Plaintiffs' points 1 through 22 are overruled.

■ The trial court acted properly in assessing one-half of the court costs against plaintiffs. The matter of taxing costs is within the sound discretion of the court. *Broadway Plan v. W. L. Ravenstein*, 364 S.W.2d 741, 745 (Tex.Civ.App.—Fort Worth 1963, writ ref'd n. r. e.). Furthermore, Juan M. was partially successful in the litigation as he was allowed attorney's fees in the suit to construe the will, and was also allowed the aforesaid expenses incurred by him in the care and preservation of the properties. *H. Richards Oil Company v. W. S. Luckie, Inc.*, 391 S.W.2d 135 (Tex.Civ. App.—Austin 1965, writ ref'd n. r. e.). No abuse of discretion is shown. Plaintiffs' points of error twenty-three and twenty-four are overruled.

■ It is further contended by plaintiffs that the trial court erred in refusing to require Juan M. to pay interest to them on the monetary value of their share of the properties from May 15, 1968 to date of judgment. The contention cannot be sustained. Interest is recoverable as a matter of law where damages, either ex contractu or ex delicto, are complete at a definite time and the amount of such damages is determined by fixed rules of evidence and known standards of value. *Watkins v. Junker*, 90 Tex. 584, 40 S.W. 11 (1897); *Hayek v. Western Steel Company*, 469 S.W.2d 206 (Tex.Civ.App.—Corpus Christi 1971, affirmed 478 S.W.2d 786); *Statler Hotels v. Herbert Rosenthal Jewelry Corporation*, 351 S.W.2d 579 (Tex.Civ.App.—Dallas 1961, writ ref'd n. r. e.). This case does not fall within that rule.

Furthermore, the judicial determination that Juan M. was not entitled to partition the property under the terms and provisions of the will did not become final until November 24, 1971, when the Supreme Court

refused a writ with the notation "no reversible error" in the *Second Gonzalez Case,* and the partition itself was not accomplished until trial of the present case. Moreover, the judgment states:

". . . the total agreed value of the property owned by the parties agreed to solely as an arbitrary figure for purposes of partitioning under the stipulation *but for no other purpose* is the sum of $943,-840.00, and that each of the parties is entitled to select and receive real property so valued at $134,834.00." (Emphasis supplied).

There is nothing in the record which tends to establish the value of the properties other than the stipulation, which, by its very terms is stated to be an arbitrary figure and is to be used *only* for the purposes of partitioning the properties. That value could not be used for the purpose of determining the amount of damages. Under the record here presented, the amount of damages, if any, sustained by plaintiffs because of the failure to partition the properties immediately following their demand in October, 1968, was not determined at the trial by fixed rules of evidence and known standards of value. Plaintiffs' points 25 and 26 are overruled.

The jury further found: that Adolfo Gonzalez, Arnolfo Gonzalez, and Jose Gonzalez each requested Juan M., on or about March 16, 1968, to qualify as Executor under the Will and to take possession and control of the properties involved; that Juan M. had been reasonably led to believe by the language of the joint and mutual will that he had been appointed to serve as Executor to manage the joint estate created by the will; that plaintiffs and defendant agreed "on or about May 15, 1968 that Juan Gonzalez would probate the will and manage and control the properties from their mother and father during the regular course of administration"; that it was necessary in the management, maintenance, care and preservation of the properties involved to incur the expense of a manager of the rental properties; that Juan M. provided those services; and that $31,200.00 was reasonable compensation for such services.

The trial court, in the judgment, disregarded those findings solely on the ground that they were immaterial as a matter of law, and, as already stated, refused to allow any compensation to Juan M. for his services as manager of the properties, and further charged all such sums of money paid by Juan M. to himself as manager to him. Those actions by the trial court are the subject of defendant's cross points 1 through 4.

Juan M. does not seek any fees allowable by the Texas Probate Code as executor of Isabel's Estate. There is no showing of any relationship between the amount of fees to which he would be entitled as an executor and the compensation sought by him for his services in managing the properties. In substance, he merely claims that he is entitled to compensation for personal services incident to the management of properties.

A tenant in common who takes control of property which he owns in common with others, in the absence of an agreement with the other tenants in common, is not entitled to compensation for personal services rendered in managing the jointly owned property. 20 Am.Jur.2d, Cotenancy and Joint Ownership, § 39 (1965). There is no such agreement in this case. The trial court correctly charged defendant with all moneys which he paid to himself as compensation for managing the properties and properly considered that factor in partitioning the properties. Defendant's cross points are overruled.

The judgment of the trial court is AFFIRMED.