COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-07-067-CV

GARY W. SHORT APPELLANT

V.

EDDIE D. SHORT APPELLEE

------------

FROM COUNTY COURT AT LAW NO. 2 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Gary W. Short appeals the trial court’s judgment partitioning a parcel of land owned by Gary and his brother, Eddie D. Short.  In three issues, Gary complains that the trial court improperly partitioned the property, denied Gary’s claim for reimbursement, and ordered him to pay court costs.  Eddie did not file an appellee’s brief responding to Gary’s complaints.  We reverse and render in part and affirm in part.

The property at issue is a five-acre tract of real estate in Tarrant County.  Regarding the property, the trial court found as follows:

•The property was acquired by M.L. Short and Neta Short (Gary and Eddie’s parents) during the course of their marriage.

•M.L. had five children during his lifetime: Derryl, Eddie, Gary, Alvin, and Victor.

•Victor predeceased M.L.; he had one child and heir, Geri K. Rhodes.

•M.L. died intestate on July 4, 1988.

•At M.L.’s death, Neta owned a five-tenths interest in the property; Derryl, Eddie, Gary, Alvin, and Geri each inherited a one-tenth interest in the property.

•Eddie acquired the interests of Neta and others—including Gary—so that he owns a nine-tenths interest in the property.

•Gary acquired Geri’s one-tenth interest.

Based on these findings, the trial court rendered judgment that Gary owns a one-tenth undivided interest in the property and Eddie owns a nine-tenths undivided interest. 

In his first issue, Gary challenges the trial court’s finding that M.L. and Neta acquired the property during their marriage and complains that the trial court erred in rendering judgment that he owns a one-tenth interest, rather than a one-fifth interest, in the property.

In a partition suit, the trial court “shall determine the share or interest of each of the joint owners or claimants in the real estate sought to be divided.”
(footnote: 2)  But disputed fact issues must be resolved by the fact-finder.
(footnote: 3)  Where, as here, the trial court is the fact-finder, the court’s fact findings 
have the same force and dignity as a jury’s answers to jury questions.
(footnote: 4)  The trial court’s findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the same standards that are applied in reviewing evidence supporting a jury’s answer.
(footnote: 5)
 We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact.
(footnote: 6)  In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable fact-finder could and disregard evidence contrary to the finding unless a reasonable fact-finder could not.
(footnote: 7)
 The evidence of Neta’s ownership of the property is as follows:

•
M.L. and Neta were married in 1944.  In 1962, they moved onto the property with their family and began “paying” for the property. There is no evidence concerning the nature of those payments, however, such as whether they were rental payments or otherwise.
  

•
Eddie testified that M.L. had told him that he and Neta had “bought” the property in 1962 and that “maybe” there had been a “Contract to Purchase” the property.  Eddie’s wife, Linda, also testified she had seen a “Contract of Sale” for the property.
(footnote: 8)  Eddie, however, was not able to find any document in deed records showing a 1962 acquisition of the property by M.L. and Neta, 
and
 no contract of sale was introduced at trial.

•Neta executed an “Affidavit of Interest” in 1989, in which she claimed that she and M.L. had bought the property on June 2, 1962 while they were married, and that she still owned a one-half interest in the property.
(footnote: 9)  Neta also executed a warranty deed in 1989 in which she purported to convey her one-half interest in the property to Eddie and Linda.
(footnote: 10)

Having carefully considered this evidence, we hold that it is not legally sufficient to prove that Neta, in fact, acquired an interest in the property during her marriage to M.L.  Because there is no competent evidence showing that Neta owned an interest in the property, the trial court erred by concluding that Gary owns only a one-tenth interest in the property based on Neta’s alleged five-tenths interest in the property at the time of M.L.’s death.

The evidence, however, does establish that M.L. acquired the property in 1979 as his sole and separate property
.  A warranty deed executed in September 1979 and filed in Tarrant County in 1980 recites that the property was conveyed to “Mendell L. Short.”
(footnote: 11)  The deed does not mention Neta, and by September 1979, M.L. and Neta had been divorced for over ten years. Further, nine days after M.L. died in July 1988, Eddie’s wife Linda executed an affidavit of heirship in which she averred that “[d]uring his lifetime, and while he was a single man, MENDELL LEE SHORT acquired [the property] as his sole and separate property[.]”  
When the property was conveyed to M.L. by deed in 1979, Eddie and Linda had been married nine-and-a-half years.
  Linda testified that, when she signed the affidavit, she believed that M.L. was the sole owner of the property.
  Gary also testified that M.L. bought the property in 1979.

Because M.L. died unmarried and intestate, his four living children, along with Geri Rhodes, the sole heir of M.L.’s predeceased child, each acquired a one-fifth interest in the property at M.L.’s death.
(footnote: 12)  Moreover, according to the trial court’s unchallenged findings, Eddie acquired the interests of Derryl, Gary, and Alvin in the property, and Gary acquired Geri’s interest.
(footnote: 13)  Therefore, Gary owns a one-fifth interest in the property.  Accordingly, we sustain Gary’s first issue.

In his second issue, Gary complains that the trial court erred by rendering judgment that he take nothing on his claim for reimbursement for Eddie’s pro rata share of $19,000 in property taxes that Gary contends he paid on the property.
(footnote: 14)
 The duty to preserve common property rests on all of the tenants in common.
(footnote: 15)  Thus, a tenant in common who expends funds for the necessary or proper preservation of common property is entitled in a judicial partition of the jointly owned property to have such expenditures charged to the tenants in common in accordance with their pro rata ownership.
(footnote: 16)  But a tenant in common who seeks reimbursement from his cotenants for such expenditures must “do equity and allow as an offset the value of the use of the premises.”
(footnote: 17) 

Gary occupied the property free of charge.  Linda testified that Gary had offered to help with delinquent property taxes, which Eddie and Linda were worried about, in exchange for having a place to live on the property.  Eddie testified that Gary was living in “the family home,” M.L.’s old house.  Eddie further testified that the money Gary had paid for property taxes had been a gift to Eddie and Linda because Gary wanted to help with the taxes.  Gary testified that Linda and Eddie had cared for him when he was sick and “suffer[ing] seizures and stuff all the time.”  Further, Gary never offered to allow the value of his use of the property as an offset to his claim for reimbursement.  Instead, he acknowledged that he had rented out part of the property and had not shared the rent he collected with anyone.
(footnote: 18)
 We hold that the trial court did not err by denying Gary’s claim for reimbursement.  Therefore, we overrule Gary’s second issue.

In his third issue, Gary complains that the trial court erred by rendering judgment that each party should bear his own court costs.
(footnote: 19)  Gary argues that, as the successful party, he is entitled to recover his court costs from Eddie.
(footnote: 20)  Gary was not entirely successful in his suit, however.  In his petition, he claimed that he owned a four-fifths interest in the property and that Eddie owned a one-fifth interest.  Yet the evidence shows that the opposite is true.  Nor did Gary prevail on his claim for reimbursement.  For these reasons, we hold that the trial court did not err by requiring Gary and Eddie to each bear their own court costs.
(footnote: 21)  Accordingly, we overrule Gary’s third issue.

Having sustained Gary’s first issue, we reverse the part of the trial court’s judgment which declares that Gary owns a one-tenth interest in the property and that Eddie owns a nine-tenths interest in the property.  We render judgment that Gary owns a one-fifth interest in the property and that Eddie owns a four-fifths interest.
(footnote: 22)  We affirm the remainder of the trial court’s judgment.

PER CURIAM

PANEL F:  CAYCE, C.J.; DAUPHINOT and HOLMAN, JJ.

DELIVERED:  January 3, 2008

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
Tex. R. Civ. P.
 760.

3:
See Yturria v. Kimbro,
 921 S.W.2d 338, 342 (Tex. App.—Corpus Christi 1996, no writ); 
Azios v. Slot,
 653 S.W.2d 111, 113 (Tex. App.—Austin 1983, no writ); 
Rayson v. Johns,
 524 S.W.2d 380, 382 (Tex. Civ. App.—Texarkana 1975, writ ref’d n.r.e.).

4:
Anderson v. City of Seven Points
, 806 S.W.2d 791, 794 (Tex. 1991).

5:
Ortiz v. Jones,
 917 S.W.2d 770, 772 (Tex. 1996); 
Catalina v. Blasdel,
 881 S.W.2d 295, 297 (Tex. 1994).

6:
Uniroyal Goodrich Tire Co. v. Martinez
, 977 S.W.2d 328, 334 (Tex. 1998),
 cert. denied
, 526 U.S. 1040 (1999);
 Robert W. Calvert, 
"No Evidence"
 
and "Insufficient Evidence" Points of Error
, 38 T
EX
. L. R
EV
. 361, 362–63 (1960)
.

7:
City of Keller v. Wilson
, 
168 S.W.3d 802, 807, 827
 (Tex. 2005).

8:
Eddie was fourteen in 1962.

9:
Neta sued for and obtained a default divorce from M.L. in 1969.  The divorce decree recites that “no community property was acquired during the marriage of the parties hereto.” 

10:
Neta also intervened in a partition suit between Alvin and Eddie.  The trial court in that suit denied Alvin’s motion to strike Neta’s petition in intervention on the basis that Neta’s interest in the property was “not necessarily extinguished” by the 1969 divorce decree.  There is no evidence, however, that the trial court ruled in the 1989 partition suit that Neta owned an interest in the property.

11:
See In re Marriage of Murray,
 15 S.W.3d 202, 205 (Tex. App.—Texarkana 2000, no pet.) (stating that a deed is prima facie evidence of the grantee’s ownership).

12:
See
 
Tex. Prob. Code Ann.
 § 38(a)(1) (Vernon 2003) (providing that the property of an unmarried, intestate person passes to his children and their descendants).

13:
See 
McGalliard v. Kuhlmann
, 722 S.W.2d 694, 696 (Tex. 1986); 
Raman Chandler Props., L.C.
 
v. Caldwell’s Creek Homeowners Ass’n, Inc.
, 
178 S.W.3d 384, 390 (Tex. App.—Fort Worth 2005, pet. denied) (both providing that unchallenged findings of fact are binding on an appellate court unless the contrary is established as a matter of law or there is no evidence to support the finding).

14:
Although Gary contends that he paid $19,000 in property taxes, the evidence shows that Gary paid only $8,000 in taxes and Eddie paid $14,156.58.  Gary had Linda purchase cashier’s checks from his account for first $10,000 and then $9,000, but eventually changed his mind and had her purchase a check for $8,000 for the taxes.  Linda paid the $8,000 towards delinquent property taxes that were owed on the property; she put the $10,000 and $9,000 amounts back into Gary’s bank account. 

15:
Gonzalez v. Gonzalez,
 552 S.W.2d 175, 181 (Tex. Civ. App.—Corpus Christi 1977, writ ref’d n.r.e.).

16:
Id.
; 
Wooley v. West,
 391 S.W.2d 157, 160 (Tex. Civ. App.—Tyler 1965, writ ref’d n.r.e.); 
Poenisch v. Quarnstrom,
 386 S.W.2d 594, 597–98 (Tex. Civ. App.—San Antonio 1965, writ ref’d n.r.e.).

17:
Roberts v. Roberts,
 136 Tex. 255, 259, 150 S.W.2d 236, 238 (1941); 
accord Scott v. Scruggs,
 836 S.W.2d 278, 281 (Tex. App.—Texarkana 1992, writ denied); 
Gilleland v. Meadows,
 351 S.W.2d 656, 658 (Tex. Civ. App.— Dallas 1961, no writ) (both following 
Roberts
).

18:
It is unclear how much rent Gary collected.  He testified that he had rented the property for “a hundred a month, or something like that” for “[m]aybe six months or a year.”  He also conceded, however, that he’d had other renters on the property as well.

19:
Gary’s contention that the trial court required him to pay all court costs is not supported by the trial court’s judgment.

20:
See
 
Tex. R. Civ. P.
 131 (“The successful party to a suit shall recover of his adversary all costs incurred therein . . . .”).

21:
See Jones v. Mask,
 196 S.W.2d 693, 695 (Tex. Civ. App.—Galveston 1946, no writ) (holding same in partition suit).

22:
See
 
Tex. R. App. P.
 43.2(c).